UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BEN H. SCOTT (#94592)                                              CIVIL ACTION

VERSUS

MAJOR PINION                                                       NO. 13-0207-JJB-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 17, 2013.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BEN H. SCOTT (#94592)**                                              **CIVIL ACTION**

**VERSUS**

**MAJOR PINION**                                                       **NO. 13-0207-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The pro se plaintiff, an inmate confined at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Major Pinion, complaining that the defendant violated the plaintiff's constitutional rights in November, 2012, by improperly charging the plaintiff with a disciplinary report and by thereafter maintaining the plaintiff in administrative segregation for eleven days pending resolution of the disciplinary charge, resulting in the plaintiff missing a deadline to file a pleading in the United States Supreme Court.

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted.  An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law.  Denton v. Hernandez, 504 U.S. 25, 31 (1992), citing Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hicks v. Garner, 69 F.3d 22, 24-25 (5th Cir. 1995).  A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"  Id. at 32-33.  A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  Davis v.

Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).  The law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless, a category encompassing allegations that are fanciful, fantastic and delusional.  Denton v. Hernandez, supra, 504 U.S. at 32.  Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915.  Id. at 33; Ancar v. Sara Plasma, Inc., 964 F.2d 465, 468 (5th Cir. 1992).  A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed.  See Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986).

In his Complaint, the plaintiff alleges that on November 29, 2012, he was issued a disciplinary charge during a strip search at EHCC when it was discovered that the plaintiff had failed to ingest one or more pills which had been dispensed at pill call.  Although the plaintiff attempted to explain to Major Pinion during the search that he had delayed taking one of his pills because it caused an upset stomach if he did not eat first, Major Pinion nonetheless charged the plaintiff with the disciplinary violation and ordered the plaintiff placed in administrative segregation pending a hearing on the charge.  The plaintiff complains, however, that defendant Pinion thereafter failed to "turn the disciplinary report in" on the date it was issued, and this resulted in the disciplinary board hearing not taking place the next day (Friday), and also resulted in the plaintiff being maintained in administrative segregation over the weekend, "without his legal documents that was needed to prepare his writ of certiorari before the U.S. Supreme Court."[1]  According to the plaintiff, this was part of a "scheme" by defendant Pinion to

---

1. The plaintiff asserts that he requested to be allowed to obtain his legal materials prior to being placed in administrative segregation, but defendant Pinion failed to respond to this request, and that there is no policy at the prison which prevents him from retaining possession of his legal materials while in administrative segregation.

maintain the plaintiff in administrative segregation for as long as possible.  On the following Monday, the plaintiff appeared before the disciplinary board but, when the plaintiff observed that defendant Pinion was a member of the board on that date, the plaintiff "invoked" his rights under a prison rule which dictated that disciplinary boards should not be conducted by prison officials who have had any involvement with the charge.  The plaintiff also asserts that he complained at the disciplinary hearing that he had not received a copy of his disciplinary report at least 24 hours before the hearing as mandated by prison rules.  Major Pinion, therefore, deferred the hearing to the next hearing date (Wednesday).  When that date came, however, the plaintiff was informed by a co-inmate legal assistant that Major Pinion had referred the matter for an investigation.  As a result, the plaintiff's disciplinary hearing did not take place until the ensuing Friday, December 7, 2012, and he was not released from administrative segregation until the following Monday, December 10, 2012.  The plaintiff complains that, as a result of this extended period of time without his legal materials in administrative segregation, he was unable to meet a deadline of December 18, 2012, to file a writ of certiorari in the United States Supreme Court, which writ was ultimately dismissed as untimely.

The plaintiff's allegations fail to state a claim of constitutional dimension.  First, the law is clear under § 1983 that allegations by an inmate plaintiff that he has been reported or punished for conduct which he did not commit or for conduct which does not warrant punishment do not, without more, state a claim of a denial of due process.  Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984).  Further, the United States Supreme Court has held that ordinary prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate.  Sandin v. Conner, 515 U.S. 472, 486 (1995).  In Sandin, the Supreme

Court concluded that a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim.  In the instant case, this Court similarly concludes that the plaintiff's placement in administrative segregation for a period of eleven days did not result in an atypical and significant deprivation within the context of prison life.  See Dickerson v. Cain, 241 Fed. Appx. 193, 194 (5th Cir. 2007) (finding that placement in punitive segregated confinement does not present "an atypical or significant hardship beyond the ordinary incidents of prison life").  Accordingly, this claim does not rise to the level of a constitutional violation and must be dismissed.

Turning to the plaintiff's claim that defendant Pinion interfered with the plaintiff's access to the courts, by allegedly maintaining the plaintiff in administrative segregation without access to his legal materials for a period of eleven days, this claim also must be rejected.  In this regard, a substantive right of access to the courts has long been recognized.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  Specifically, access to the courts is incorporated in the First Amendment's right to petition the government for redress of grievances.  Wilson v. Thompson, 593 F.2d 1375, 1387 (5th Cir. 1979).  In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts.  Thus, for example, prison officials may not block or refuse to transmit, through procedural devices, the transmission of legal documents which prisoners wish to send to the courts.  Nor can they take other actions – such as confiscating or destroying legal papers – that would have a similar effect.  Crowder v. Sinyard, 884 F.2d 804, 811 (5th Cir. 1989), cert. denied, 496 U.S. 924 (1990), overruled on other grounds, Horton v. California, 496 U.S. 128 (1990).  The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis v. Casey, 518 U.S. 343, 356 (1996).  Further, in order to prevail on a claim of interference with

access to the courts, an inmate claimant must be able to show that he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996). Further, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so. See Richardson v. McDonnell, 841 F.2d 120, 122 (5th Cir. 1988) (rejecting a claim of alleged interference with an inmate's access to the courts where there was no showing of any intent to do so); Herrington v. Martin, 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983"). Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights, Johnson v. Rodriguez, 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court" Christopher v. Harbury, 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." Id.

The plaintiff's claim fails on several fronts. First, although the plaintiff asserts in conclusory fashion that his over-long detention in administrative segregation was for the very purpose or "scheme" of interfering with his access to the courts, his factual allegations do not bear this out. All that the plaintiff alleges in this regard is a series of events from which the plaintiff infers such intent, i.e., that the defendant did not honor a request by the plaintiff to obtain his legal materials before placement in segregation, that the defendant supposedly has "notice" that the plaintiff had an upcoming legal deadline, that the defendant delayed the

processing of the plaintiff's disciplinary report until after the weekend, that at the disciplinary hearing scheduled on the ensuing Monday, the defendant was "smiling, as [if] to say I got you now," and that the defendant deferred the hearing scheduled on the ensuing Wednesday for an investigation.  The plaintiff does not allege, however, that the defendant ever made any statement or gave any overt indication that was expressive of an intent to interfere with the plaintiff's legal proceedings.  Accordingly, the foregoing series of events upon which the plaintiff relies leads just as readily to an inference that the delays attendant to his disciplinary proceedings were merely a part of the orderly processing of the disciplinary report.  For example, the plaintiff concedes that it was he himself who "invoked his rights" on the Monday following the issuance of the report and so was himself responsible for the continuance of the disciplinary hearing on that date.[2]  Thus, the plaintiff's factual recitation does not lead to a conclusion that the defendant intended to interfere with the plaintiff's access to the courts.

Second, and more importantly, the Court is unable to find that the defendant bears the legal responsibility for the plaintiff's alleged failure to timely file his writ application in the United States Supreme Court.  Specifically, there is a 90-day period allowed for the filing of a writ of certiorari in the United States Supreme Court following the entry of an adverse ruling.  See 28 U.S.C. § 2101(c).  Accordingly, although the plaintiff complains of his 11-day detention in administrative segregation in December, 2012, it is clear that prior to such detention, there had

---

2. The Court further notes that, even had the defendant turned in the plaintiff's disciplinary report on the date it was issued, Thursday, November 29, 2012, the disciplinary hearing on that report likely would not have been appropriately heard the next day, Friday, November 30, 2012, as the plaintiff argues.  This is because the plaintiff admits that there is a "24 hours rule" at the prison, pursuant to which inmates are supposed to receive copies of their disciplinary reports at least 24 hours prior to any hearing thereon.  See rec.doc.no. 1.  The plaintiff's allegations further suggest that, inasmuch as he "invoked his rights" under this rule at his disciplinary hearing scheduled on the ensuing Monday, he may have similarly "invoked his rights" under this rule had the disciplinary hearing been undertaken on the preceding Friday.

elapsed a period of more than two months during which he had had the opportunity to prepare his writ application. Further, the plaintiff acknowledges that upon his release from such detention on December 10, 2012, he then had an additional week, until December 18, 2012, to prepare and submit the application to the Court. These periods, the 2-month period preceding his placement in administrative segregation and the 8-day period thereafter, during all of which time he was not limited in his ability to prepare and submit his writ application, leads the Court to conclude that his failure to meet the referenced deadline may not be attributed to the defendant's conduct.

Finally, the plaintiff has provided no information regarding the substance of his underlying claims before the United States Supreme Court or any basis upon which this Court may conclude that the claims had potential merit. See Mendoza v. Strickland, 414 Fed. Appx. 616, 619 (5th Cir. 2011) (dismissing a claim of denial of access to the courts where the inmate provided no information regarding the merit of his underlying post-conviction claims). In the absence of such information, the plaintiff's allegations fail to show that he suffered any prejudice in fact as a result of the defendant's actions and fail to establish his entitlement to relief in this Court. See Phillips v. Walker, 122 Fed. Appx. 120 (5th Cir. 2005) (upholding dismissal of an inmate's claim where he had not shown that he had sustained actual injury and where he had not shown "that he would have raised a nonfrivolous issue if he had been able to file a timely petition for writ of certiorari"). Accordingly, the plaintiff's claim of interference with his access to the courts is subject to dismissal as being without merit.

Finally, to the extent that the plaintiff seeks to invoke the supplemental jurisdiction of this Court over claims arising under state law, a district court may decline to exercise supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original

jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended the dismissal of all of the plaintiff's federal claims asserted herein, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that this action be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(g) and 1915A.[3]

Signed in Baton Rouge, Louisiana, on October 17, 2013.

                                                       **RICHARD L. BOURGEOIS, JR.**
                                                       **UNITED STATES MAGISTRATE JUDGE**

---

      3. Note that 28 U.S.C. § 1915(g) provides that, "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."